**Appeal of LEO J. GOLDBERGER.**          **Docket No. 243.**

Losses computed on taxpayer's stock-market transactions in 1920.

Submitted December 8, 1924; decided December 29, 1924.

*Theodore Phillips, jr., Esq.*, for the taxpayer.

*Robert A. Littleton, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal was submitted on the pleadings and certain exhibits filed by consent of both parties, from which the Board makes the following

FINDINGS OF FACT.

The Commissioner in a letter dated July 5, 1924, determined a deficiency in income tax against the taxpayer for the year 1920 in the sum of $1,296.62, due to the following adjustments in the taxpayer's net income: Loss on stock exchange transactions reduced from $10,345.50 to $2,118.20; charitable contributions reduced by $110; interest

on Victory Loan notes amounting to $512.66 added to income subject to surtax. The taxpayer admits the propriety of the adjustments with respect to charitable contributions and interest on Victory notes, but has appealed to this Board from the determination in so far as it results from the reduction of deduction for loss on stock market transactions.

The taxpayer conducted his stock-market transactions through Carleton & Mott, brokers. Three different statements by Carleton & Mott were filed in evidence, containing the same figures but arranged in different tabulations. From these it appears that on January 1, 1920, Carleton & Mott held for the taxpayer 300 shares of Sinclair Consolidated stock, which had cost him $14,445 in 1919, and $5,000 of Victory 4¾ notes, which had cost him $5,000, and that he was indebted to them in the sum of $14,442.04. During the year the taxpayer deposited as additional margin $1,000 in cash (February 5), $5,000 of Victory notes (February 6), $2,000 of Victory notes (May 3), and $2,000 of Victory notes (July 30), all of which Victory notes had been acquired by him at par. The brokers bought for the account of the taxpayer 100 shares of Sinclair Consolidated stock for the sum of $3,515 (May 13), 200 shares of Philadelphia Co. stock for $8,130 (April 28), and 100 shares of Philadelphia Co. for $3,265 (December 30). They sold for the taxpayer's account during the year $10,000 of Victory notes for $9,831.04 (May 3), 100 shares of Sinclair Consolidated for $3,581 (April 28), 100 shares of Sinclair Consolidated for $2,406 (December 15), 200 shares of Sinclair Consolidated for $4,362 (December 30), 100 shares of Philadelphia Co. for $3,583 (August 26), and 100 shares of Philadelphia Co. for $3,233 (December 30).

They charged the taxpayer with interest at call money rates on current balances aggregating $1,129.70 during the year, and credited him with dividends on Philadelphia Co. stock $225, interest received on Victory notes $142.50, and stock dividends from the Sinclair Consolidated Co. of six shares (July 15), and 6.12 shares (October 21). At the end of the year they held for the taxpayer $4,000 of Victory notes, 100 shares of Philadelphia Co., and 12.12 shares of Sinclair Consolidated. At this time the debit balance against the taxpayer on the books of the brokers was $2,118.20.

#### DECISION.

The deficiency appealed from should be recomputed in accordance with the following opinion. Final determination will be settled on consent or on ten days' notice in accordance with Rule 50.

#### OPINION.

Ivins: It is apparent that the Commissioner in making the determination appealed from, misunderstood the brokers' statements and took the taxpayer's debit balance thereon as his net loss for the year. The taxpayer on the other hand took the statement of the brokers that his net loss was $9,093.96, added thereto the interest charges and regarded the sum as his deductible loss on stock transactions. In doing this, he overlooked the fact that the brokers had not taken into consideration the stock dividends on Sinclair Consolidated, and

had treated dividends and Victory note interest like other credits, which may have been perfectly proper bookkeeping from the point of view of the relations between broker and customer but which did not constitute a proper basis for the computation of income taxes.

In order to compute the income tax we have analyzed the transactions as follows:

(A) *Victory notes.*—The taxpayer had on deposit with the brokers at the beginning of the year $5,000 of Victory notes and added thereto during the year $9,000 more, and had left on deposit at the end of the year $4,000. The other $10,000 of these notes which had cost him $10,000 were sold on May 3 for $9,831.04, showing a loss of $168.96.

(B) *Sinclair Consolidated.*—The taxpayer had on January 1 three hundred shares which had cost him $14,445 in 1919. He sold 100 shares of this on April 28 for $3,581, a loss of $1,234. On May 13 he bought 100 shares for $3,515, after which transaction he had altogether 300 shares which had cost him $13,145. Upon these 300 shares and before he sold any of them, he received stock dividends of 12.12 shares, so for purposes of computing gain or loss 312.12 shares cost a total of $13,145, an average price of $42.11½. This average price, applied to the 300 shares sold in December, gives a cost for them of $12,634.50. They were sold for $6,768, a loss of $5,866.50. At the close of the year he still had on hand 12.12 shares to which is attributable a cost of $510.50.

(C) *Philadelphia Company.*—The taxpayer purchased 200 shares of Philadelphia Co. in April for $8,130 and sold them in August and December for an aggregate of $6,816, showing a loss of $1,314. He also acquired 100 shares on December 30 which he still held at the close of the year. The 1918 law contained no provision such as that contained in section 214(a)5 of the 1921 law, affecting wash sales, so we need not regard the stock purchased on December 30 as substituted for the stock sold on the same day.

(D) *Interest paid.*—The brokers charged the taxpayer interest on current balances at call money rates which aggregated $1,129.70 during the year. This amount, of course, is a proper deduction and might be reported either as part of the loss in stock transactions or as a separate item of interest paid. The results will be the same either way.

(E) *Dividends and interest received.*—During the year the brokers credited the taxpayer with dividends on Philadelphia Co. stock of $225 and with interest on Victory notes of $142.50. They treated them as ordinary credits going to reduce the taxpayer's debit balance, but for tax purposes they should be handled separately for the reason that the income represented by them is subject to surtax but not to normal tax.

Having determined the various items, we are now in a position to compute the taxpayer's deficiency. The loss on stock transactions reported by the taxpayer at $10,345.50 should be reduced to $9,713.16, made up as follows:

| | |
|---|---|
| Loss on Victory notes | $168.96 |
| Loss on 100 shares of Sinclair Consolidated | 1,234.00 |
| Loss on 300 shares Sinclair Consolidated | 5,866.50 |
| Loss on Philadelphia Co | 1,314.00 |
| Interest charges | 1,129.70 |
| | 9,713.16 |

To the difference of $632.34 should be added the item of $110, disallowed contributions which the taxpayer concedes, making a net increase of income subject to both normal and surtax of $742.34.

The income subject to surtax only should be increased by the item of $512.66 conceded by the taxpayer, and the further items of dividends $225 and Victory bond interest $142.50, making a net increase of income subject to surtax of $880.16.

Upon these increased amounts of net income the taxes should be computed at 1920 rates in order to determine the deficiency.